UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. C-11-698(1) |
| | § | |
| DAVID VILLARREAL, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant David Villarreal's ("Defendant") Requested Jury Instruction (Dkt. No. 35). Having considered the requested instruction, the response by the United States of America (the "Government") (Dkt. No. 40), the record, and the applicable law, the Court is of the opinion that Defendant's request should be **DENIED**.

**I. Background**

On June 25, 2011, Defendant and his sister, co-defendant Belinda Villarreal, arrived at the Falfurrias, Texas Border Patrol Checkpoint. Before they arrived, Border Patrol officials had received an anonymous tip that they were carrying illegal drugs. Border Patrol officials searched their car and found ten bundles wrapped in brown postal tape in the trunk of the car. The bundles contained a white powdery substance that the agents believed was methamphetamine. Defendant and his sister were arrested, and both confessed that they were transporting what they believed to be cocaine to Houston, Texas. The Government thereafter obtained an indictment based on a representation to the grand jury that the substance possessed by the Villarreals was methamphetamine.

Subsequent laboratory analysis by the Drug Enforcement Administration (DEA) concluded that the packages instead contained cocaine and had a net weight of 8.4 kilograms. The laboratory separated the ten bundles into two groups. The first group, consisting of two bundles containing wet white powder and 1 bundle containing wet pink powder, had a net weight of 2.5 kilograms and a purity of .41%. The second group, consisting of 7 bundles of compressed white powder, had a net weight 5.9 kilograms and a purity of 3.2%. The laboratory analysis confirmed that each individual bundle contained the controlled substance cocaine.

On September 28, 2011, a federal grand jury returned a superseding indictment for both defendants in violation of Title 21, United States Code, Section 846, 841(a)(1), and 841(b)(1)(A).

## II. Defendant's Requested Jury Instruction

Title 21, United States Code, Section 841 makes it an offense to knowingly possess with intent to distribute a substance that contains a detectable amount of cocaine. Section 841 further states that the punishment for the offense depends upon the amount of an illegal substance that is possessed. If that amount is "5 kilograms or more of a mixture or substance containing a detectable amount of" cocaine, the defendant is subject to a mandatory minimum sentence of 10 years in prison and a maximum of life for a first offense. 21 U.S.C. § 841(b)(1)(A). If the amount of the mixture or substance containing cocaine is less than 500 grams, then there is no mandatory minimum and the maximum penalty is up to 20 years in prison for a first offense. 21 U.S.C. § 841(b)(1)(C).

Defendant admittedly possessed a substance that he believed to contain cocaine, and the substance did in fact contain a detectable amount of cocaine. However, Defendant claims that he should not be held responsible for 8.4 kilograms of cocaine at sentencing because the substance

he possessed was so diluted that it was essentially unmarketable "garbage." According to Defendant, if the Government fails to prove that the full amount of the mixture or substance Defendant possessed was both marketable as found and weighed more than 5 kilograms, then the jury should have the option of convicting him of the offense of possession with intent to distribute cocaine, with no mandatory minimum and a maximum of 20 years. As such, Defendant asks the Court to instruct the jury as follows:

> If you find that the Government has proven, beyond a reasonable doubt, that the defendant possessed with intent to distribute a controlled substance, then you must determine whether the Government has proven the amount and type of controlled substance beyond a reasonable doubt. In this case, the Government has alleged that the defendants possessed, with intent to distribute, more than 5 kilograms of a mixture or substance containing a detectable quantity of cocaine. It is not necessary that the Government establish that the substance possessed by the defendants was 100% pure cocaine. However, the Government must show that the mixture or substance was "marketable" as cocaine, that is, that a consumer of cocaine or a distributor of cocaine would have willingly consumed or purchased the mixture or substance if they were aware of the purity of the cocaine established by the Government. Therefore, the Government must prove beyond a reasonable doubt the following:
>
> First, that the substance possessed by the defendant contained a detectable amount of cocaine.
>
> Second, that the substance possessed by the defendant weighed at least 5 kilograms.
>
> Third, that at least 5 kilograms of the substance possessed by the defendants was marketable as cocaine, that is, that purchasers or consumers of cocaine would willingly purchase or consume the substance if they were aware of the purity established by the evidence in this case.

(Dkt. No. 35 at 6.)

### III. Applicable Law

The questions raised by Defendant are: (1) what approach the Court should use when determining the amount of controlled substance for sentencing purposes, and (2) what qualifies as a "mixture or substance."

The United States Supreme Court specifically addressed these issues in *Chapman v. United States*, 500 U.S. 453, 459 (1991). In *Chapman*, the Court found that

> Congress adopted a "market-oriented" approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence. H.R.Rep. No. 99-845, pt. 1, pp. 11-12, 17 (1986). To implement that principle, Congress set mandatory minimum sentences corresponding to the weight of a "mixture or substance containing a detectable amount of" the various controlled substances, including LSD. 21 U.S.C. §§ 841(b)(1)(A)(i)-(viii) and (B)(i)-(viii). It intended the penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they were found-cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level. Congress did not want to punish retail traffickers less severely, even though they deal in smaller quantities of the pure drug, because such traffickers keep the street markets going. H.R.Rep. No. 99-845, supra, at pt. 1, p. 12.

*Id.* at 461. As such, the Court concluded that sentences should be based exclusively on the weight of the "mixture or substance," and with respect to drugs like heroin and cocaine, the dilutant, cutting agent, or carrier medium should be included in the weight for sentencing purposes. *Id.* at 460. The Court recognized that "[i]n some cases, the concentration of the drug in the mixture is very low . . . , [b]ut, if the carrier is a 'mixture or substance containing a detectable amount of the drug,' then under the language of the statute the weight of the mixture or substance, and not the weight of the pure drug, is controlling." *Id.* (citing *United States v. Buggs*, 904 F.2d 1070 (7th Cir. 1990) (1.2% heroin); *United States v. Dorsey*, 591 F.2d 922 (D.C. Cir. 1978) (2% heroin); *United States v. Smith*, 601 F.2d 972 (8th Cir. 1979) (2.7% and 8.5% heroin)).

Federal Circuit Courts have since applied a very factually specific analysis under the "market-oriented" approach of *Chapman* to determine the quantity of a controlled substance in a "mixture."

4

For example, in *United States v. Segura-Baltazar*, 448 F.3d 1281 (11th Cir. 2006), officers seized from the defendant's home 1.2 kilograms of a substance with a detectable amount of methamphetamine combined with dimethyl sulfone, a common cutting agent for methamphetamine. *Id.* at 1292. Although the mixture contained less than 1% methamphetamine, the court held that it satisfied the legal definition of a "mixture" under 21 U.S.C. § 841 and subjected the defendant to the mandatory minimum sentence of 120 months. *Id.* The defendant did not disagree that the methamphetamine was combined with a common cutting agent, but instead argued that the mixture was so diluted it would not be marketable or usable on the streets. *Id.* at 1293. The district judge rejected the defendant's argument both at trial and at sentencing, noting that "I don't necessarily agree with you that nobody on the street would buy it." *Id.* The Eleventh Circuit affirmed, holding that the district court correctly considered the combined weight of the cutting agent and the methamphetamine. *Id.* at 1294.

Likewise, the Third Circuit in *United States v. Berroa-Medrano*, 303 F.3d 277 (3d Cir. 2002), affirmed the district court's decision to include the entire weight of two packages containing traces of heroin in calculating the defendant's sentence, even though the purity of one package could not be determined due to its small quantity, and the purity of the other package was only 3%. *Id.* at 279—81. Because the traces of heroin were diffused within cutting agents, and the heroin could not be distinguished from or easily separated from the remaining contents of the package, the court affirmed the district court's conclusion that the contents of the packages satisfied the "mixture" criteria identified in *Chapman. Id.* at 282. The court also rejected the defendant's argument that the package containing only traces of heroin was not a "'marketable' mixture since it is highly unlikely that such a disproportionately low ratio of drugs to 'cut' was

ever intended to be consumed or ingested," explaining that none of the remaining ingredients had to be separated from the heroin in order for it to be consumed. *Id.* at 283.

In *United States v. Palacios-Molina*, 7 F.3d 49 (5th Cir. 1993), the defendant was arrested for transporting powder cocaine and two bottles containing cocaine distilled in a thick liquid. *Id.* at 50. The defendant pled guilty but objected to the drug quantity calculation at sentencing, arguing that the "waste liquid" in the bottles should have been excluded. *Id.* The district court overruled the defendant's objection and sentenced the defendant based on the greater weight. *Id*. The Fifth Circuit reversed, distinguishing *Chapman* on the grounds that the liquid was merely for transportation and concealment, was easily distinguishable from and separable from the cocaine, and would be removed before the cocaine was marketed. *Id.* at 51—52. As such, the court held that weight of the "waste liquid" should not be included in the amount of controlled substance, since the liquid/cocaine was not a usable mixture that would reach the streets, and the cocaine would be marketable only after the liquid was distilled out. *Id.* at 54. The Fifth Circuit's decision is consistent with a subsequent application note to the Federal Sentencing Guidelines, which provides that "[m]ixture or substance does not include material that must be separated from the controlled substance before the controlled substance can be used." USSG §2D1.1, Application Note 1.

**IV. Analysis**

In determining whether to include the entire weight of each individual bundle seized from Defendant, the Court must consider whether the "mixture or substance" was in a form recognizable and useable to a consumer, or whether the mixture contained additional matter that would have to be removed before the cocaine could be used.

Here, the Government claims, and Defendant does not dispute, that laboratory analysis by DEA forensic chemist Karen Hall ("Hall") revealed that each individual bundle was found to contain a detectable amount of cocaine. Hall was able to further group the bundles into two identifiable groups, one group consisting of wet powder and the other group consisting of compressed white powder. In addition to cocaine, the 5.9 kilograms of compressed white powder also contained phenyltetrahydroimidazothiazole, which Hall would testify is an adulterant that she has frequently detected in samples of cocaine submitted to the DEA Laboratory. Hall would further testify that the 5.9 kilograms of compressed white powder was similar in appearance and texture to other sample of cocaine submitted to the laboratory and appeared to be in a state that could be ingested by a drug consumer. She would also testify that although the 5.9 kilograms of compressed white powder had a "low" purity of 3.2%, she has tested other substances submitted that contained cocaine with a similarly low purity. Regarding the 2.5 kilograms of wet powder having a purity of .41%, Hall would testify that the sample had a paste like consistency and a foul odor. She would also testify that based on the color and texture, the substance was inconsistent with the cocaine she has personally tested in the laboratory.

Based on the representations made by the Government regarding Hall's testimony, it appears that the 2.5 kilograms of wet powder were not in a form recognizable and useable to a consumer. It further appears that the 5.9 kilograms of compressed white powder were in a form recognizable and useable to a consumer, and thus constitute a "mixture or substance" containing a detectable amount of cocaine within the meaning of the law. Because the 5.9 kilograms of compressed white powder appeared to Hall to be cocaine in a state that could be ingested by a drug consumer, here, as in *Segura-Baltazar*, the Court cannot "necessarily agree with [Defendant] that nobody on the street would buy it." *See Segura-Baltazar*, 448 F.3d at 1293.

Defendant has not cited, and the Court is unable to find, any other case in this Circuit in which the jury was charged with determining the issue of marketability as an element of the offense of possession with intent to distribute a controlled substance. Moreover, the "market approach" does not require a willing buyer with full disclosure of the details related to the illegal substance he intends to purchase. Thus, Defendant's requested instruction requiring that jurors find "that purchasers or consumers of cocaine would willingly purchase or consume the substance *if they were aware of the purity established by the evidence in this case*" is erroneous. (Dkt. No. 35 at 6 (emphasis added).)

## V. Conclusion

If the jury finds Defendant guilty of the offense charged in the indictment, a special verdict form will be provided for the jury to determine whether the violation involved more than 5 kilograms of a "mixture or substance" containing a detectable amount of cocaine. However, for the reasons set forth above, Defendant David Villarreal's ("Defendant") Requested Jury Instruction (Dkt. No. 35) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 6th day of February, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE